MILBURN, Appellant,

v.

ALLSTATE INSURANCE COMPANY PROPERTY
AND CASUALTY, Appellee, et al.

[Cite as *Milburn v. Allstate Ins. Co. Property & Cas.*, 185 Ohio App.3d 796, 2009-Ohio-5476.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–392.

Decided Oct. 15, 2009.

Kemp, Schaeffer & Rowe Co., L.P.A., Steven D. Rowe, and Andrew P. Schabo, for appellant.

Lane, Alton & Horst, L.L.C., Rick E. Marsh, and Monica L. Waller, for appellee.

SADLER, Judge.

{¶ 1} Plaintiff-appellant, John W. Milburn V, individually and as the administrator of the estate of Ashley Nicole Milburn, appeals from the summary judgment rendered by the Franklin County Court of Common Pleas, which dismissed appellant's claims against defendant-appellee, Allstate Insurance Company Property and Casualty.

{¶ 2} The tragic facts giving rise to appellant's claims are undisputed. On October 29, 2005, appellant's daughter, Ashley, was killed while riding as a passenger in a 1997 Honda Civic that her grandfather, John W. Milburn Jr. ("John Jr."), owned and that he had furnished for Ashley's full-time use. Ashley and her 14–year–old boyfriend, Timothy Shanks, had been out driving around with Ashley's friends, who were driving a second vehicle. The group had no specific destination at first, but eventually they drove down Agler Road toward Shanks's house with the ultimate goal of taking Shanks home.

{¶ 3} At some point Shanks asked Ashley if he could drive the Civic. Ashley assented, despite the fact that Shanks did not have a valid driver's license. According to Shanks, he was driving that night for no reason other than he wanted to drive. Shanks drove down Agler Road, following Ashley's friend Erin. When Erin slowed down, Shanks believed that Erin was going to make a right turn, so he moved into the center turn lane in order to pass her. However, Erin did not turn right and sped up. From the passenger seat, Ashley yelled at Shanks to get back over into the through lane. According to Shanks, when he failed to do so immediately, Ashley grabbed the steering wheel and pulled it to the right. Shanks lost control of the vehicle and struck two trees and a concrete barrier, killing Ashley.

{¶ 4} At the time of her death, Ashley was residing with her parents and grandparents in the same home in New Albany, Ohio. Ashley's parents held an Allstate automobile insurance policy under which the Civic was listed as a covered vehicle. The coverage for the Civic specified bodily-injury liability limits of $100,000 per person and $300,000 per occurrence, and uninsured/underinsured-motorist ("UM/UIM") limits in the same amounts. Appellant and his wife testified that while they had never explicitly forbidden Ashley to allow anyone else to drive the Civic, they always felt that such a prohibition was understood. John Jr. held a separate Allstate policy with liability limits of $250,000 per person and $500,000 per occurrence and UM/UIM limits of $100,000 per person and $300,000 per accident. The Civic was not listed as a covered vehicle on John Jr.'s policy. John Jr. had specifically forbidden Ashley to allow anyone else to drive the Civic.

{¶ 5} Shanks's mother, Jill, had an automobile insurance policy with Farmers Insurance Columbus, Inc., with liability limits of $30,000. Farmers extended coverage to Shanks for his liability and offered appellant the limits of its policy, which appellant accepted. Appellee denied coverage under both appellant's and John Jr.'s policies, after which appellant instituted this action for declaratory judgment. On November 19, 2008, the trial court granted appellee's motion for summary judgment and dismissed appellant's claims. This appeal followed, in which appellant advances three assignments of error for our review, as follows:

I. The trial court committed reversible error when it granted summary judgment in favor of respondent/appellee Allstate Insurance Company Property and Casualty in denying the extension of liability coverage to Timothy Shanks, Jr., under policy number 926554443.

II. The trial court committed reversible error when it granted summary judgment in favor of respondent/appellee Allstate Insurance Company Property and Casualty in denying underinsured motorists benefits under policy number 926554443.

III. The trial court committed reversible error when it granted summary judgment in favor of respondent/appellee Allstate Insurance Company Property and Casualty in denying underinsured motorists benefits under policy number 026848319.

{¶ 6} In his first assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment with respect to appellant's claim that Shanks was an "insured person" under the liability section of appellant's policy, thereby providing liability coverage to Shanks for the accident that killed Ashley. The trial court determined that Shanks was not an "insured person" under the language of the liability section of appellant's policy.

{¶ 7} The liability section of appellant's policy defines "insured person" as, inter alia:

1. While operating **your insured auto**:

 a. **you,**

 b. any **resident** relative,

 c. any other person operating it with **your** permission.

(Emphasis sic.)

{¶ 8} The liability section also provides that "Allstate will not pay for any damages an **insured person** is legally obligated to pay because of: * * * 8. **bodily injury** to any person related to an **insured person** by blood, marriage, or adoption and residing in that person's household." (Emphasis sic.) This is known as an intrafamily exclusion. The trial court determined that under this exclusion Shanks is not covered for Ashley's injuries, because Ashley is related to insured persons (her parents) and she resided in their household. The court refused to read the term "insured person" to mean only the person who was operating the vehicle at the time of the accident (here, Shanks) because, it explained, "the policy exclusion reads: 'an' insured person; and, the effect of 'an' encompasses three different types of Insured Persons: one being 'you,' another being a 'your resident relative,' and a third being the one Plaintiff advocates: Timothy Shanks * * *. Thus, Ashley's relation and residence with the first two precludes coverage."

{¶ 9} Appellant argues, as he did below, that because the term "insured person" is defined in reference to being engaged in "operating **your insured auto**," neither he nor any of his resident relatives can be treated as an insured person because none of them were operating the Civic at the time of the accident. Thus, he contends, the intrafamily exclusion does not apply to preclude liability coverage for Ashley's injuries. In response, appellee argues that "according to the plain language of the policy, the exclusion applies to *any* insured, not just the

one person who may fit the definition of insured with respect to the particular accident that caused the injury." (Emphasis sic.) [1]

{¶ 10} We reject appellee's argument and hold that the exclusion does not apply. We acknowledge that the trial court was correct in observing that the use of the word "an" preceding the term "insured person" necessarily includes all three possible definitions of "insured person" (that is, "a. **you**, b. any **resident** relative, c. any other person operating it with **your** permission"). However, no matter which of these three types of persons one uses to determine whether any person is an insured person, the fact remains that each is subject to the introductory qualifying phrase "While operating **your insured auto**" and thus can be an insured person for purposes of liability coverage only "while operating **your insured auto.**"

{¶ 11} Thus, to determine whether any particular person is an insured person for purposes of the intrafamily exclusion, one must first determine whether that person was, at the time of the accident, "operating **your insured auto.**" To do otherwise would be to ignore express and unambiguous language in the policy. Accordingly, we hold that the trial court erred in applying the intrafamily exclusion to exclude liability coverage for Ashley's injuries.[2] However, for the reasons that follow, we hold that other policy language precludes coverage because under that language and the undisputed facts of the case, Shanks is not an insured person entitled to coverage for his liability.

{¶ 12} Appellant argues that Shanks is an insured person and is therefore covered under the liability section of appellant's policy for Ashley's injuries because he was operating the Civic and was "any other person operating it with **your** permission." See ¶ 7, supra. The policy defines the words "you" and "your" to mean the policyholder named in the policy declarations (here, appellant and his wife). Therefore, the parties agree that under this language, Shanks is an insured person if, at the time of the accident, he was operating the Civic with permission of appellant or his wife.[3]

---

1. Neither the trial court nor the parties have cited any authority for their positions, and our research has not revealed any authority on the precise issue presented here.

2. Appellant also argues on appeal that the intrafamily exclusion is against public policy and contrary to R.C. 3937.18. Because we have determined that the exclusion does not apply, we need not reach these issues.

3. Appellant's policy defines "insured auto" as "any **auto** or **utility auto you** own which is described on the Policy Declarations. This also includes: a. A **replacement auto**; b. An **additional auto**; c. A **substitute auto**; d. A **non-owned auto**; or, e. A trailer while attached to an **insured auto.**" (Emphasis sic.) It is undisputed that neither appellant nor his wife owned the Civic. Thus, the Civic was not an auto "**you** own." The Civic was not a "replacement auto" or an "additional auto," because the policy's definitions of those terms require that the

{¶ 13} Appellant argues, as he did below, that because Ashley did not need to ask permission to drive the Civic on the day in question, she steps into the policyholders' shoes as the "you" whose permission was required, and because she gave Shanks permission to drive the Civic, Shanks was "operating it with **your** permission." For support of this proposition, appellant cites *State Farm v. Doss* (Feb. 16, 2001), 2d Dist. No. 18487, 2001 WL 127876.

{¶ 14} In *Doss*, the driver, who was the sole occupant of a vehicle titled in his girlfriend's name but insured under the girlfriend's father's automobile insurance policy, damaged the vehicle in a one-car accident. Though his girlfriend had not given Doss explicit permission to drive the vehicle on the date of the accident, she had given him permission to drive it one day earlier and had asked him to return it, which is what he was doing when the accident occurred. The issue on appeal was whether Doss had the requisite permission to drive the vehicle. (Unfortunately, the precise policy language was never made a part of the record in *Doss*, as the court in that case repeatedly noted.) The court of appeals affirmed judgment in favor of Doss on the insurer's subrogation claim against him. Distinguishing the case from others in which the alleged "first permittee" was not the titled owner of the vehicle, the *Doss* court explained that because Doss's girlfriend was the titled owner of the vehicle, she did not need the permission of the policyholder (her father) in order to drive the vehicle. Thus, the court concluded, Doss—not his girlfriend—was the first permittee.

{¶ 15} The fact that no one—including the Second Appellate District—knows the precise policy language involved in *Doss* substantially reduces the persuasive value of that case. Moreover, *Doss* is easily distinguishable from the instant case. Here, Ashley was not the titled owner of the vehicle, like Doss's girlfriend was, nor was she the policyholder. Therefore, though John Jr. furnished the Civic for Ashley's general use, she still required his permission and the permission of appellant, the policyholder, in order to use it. Thus, Ashley is the first permittee in this case—not Shanks. By the plain language of the policy at issue, Shanks was not an insured person, because he was not "operating it with **your** [meaning appellant's or his wife's] permission."

---

auto be one that the policyholder owns. The Civic was also not a "substitute auto" because the policy's definition of that term requires that the auto was being used only to replace an insured auto while the latter is being serviced or repaired or after it has been stolen or destroyed. The Civic was not a "non-owned auto" because the policy's definition of that term specifically excludes an auto "available or furnished for the regular use of **you** or a **resident** relative." (Emphasis sic.) It is undisputed that the Civic was available and furnished for Ashley's regular use and that Ashley was a resident relative of appellant. For all of these reasons, the Civic does not meet the definition of "insured auto." However, neither party has raised this issue, and we consider it waived. Thus, for our purposes, the Civic is an "insured auto" and the only issue we must determine is whether the trial court correctly determined that Shanks was not operating it "with **your** permission."

 {¶ 16} Citing *West v. McNamara* (1953), 159 Ohio St. 187, 50 O.O. 229, 111 N.E.2d 909, and *Nicholas v. State Farm Ins.*, 11th Dist. No. 2001–T–0085, 2002-Ohio-6262, 2002 WL 31545355, appellant argues that even if Ashley was the first permittee, Shanks is insured as a second permittee (that is, a permittee of the first permittee) because, by virtue of the fact that Ashley was a passenger, he was serving Ashley's purpose or benefit at the time he was driving. We reject this argument because the evidence is undisputed that Shanks was driving simply because he wanted to do so. He testified that Ashley was not impaired or unable to drive. He testified that Ashley did not ask him to drive; rather, he asked her if he could drive because he wanted to drive himself home. At the time of the accident, Shanks was not serving Ashley's purpose, benefit, or advantage. He was indulging his own desire to drive. Accordingly, Shanks is not a second permittee insured under appellant's policy. For this reason, appellant's first assignment of error is overruled.

 {¶ 17} In his second assignment of error, appellant argues that the UIM portion of his policy covers the damages to Ashley's estate and survivors because the policy covers damages to an insured person caused by the operator of an "uninsured auto." However, the trial court rejected this argument because appellant's policy plainly specifies that "an uninsured auto is not * * * a motor vehicle which is insured under the Automobile Liability Insurance of this policy." The trial court determined that because the Civic is listed in the "Vehicles Covered" section of the policy's declarations page, and that page sets forth liability limits specifically covering the Civic, it is "insured under the Automobile Liability Insurance" of the policy and thus it is not an uninsured auto.

{¶ 18} Appellant argues that the foregoing definition of what an uninsured auto "is not" does not apply because it is ambiguous. Appellant argues that this section would have been clearer had it stated that an "uninsured auto" is not an "insured auto," a term that is explicitly defined in the policy. He also argues that the phrase "is not * * * a motor vehicle which is insured" is ambiguous because its language is inconsistent with that of the liability section of the policy. The liability section of the policy refers to vehicles as "listed" and *people* as "insured," but does not refer to *vehicles* as "insured."

 {¶ 19} But language in a contract is not ambiguous just because it could have been drafted in a clearer manner. *Rucker v. Davis*, 4th Dist. No. 02CA2676, 2003-Ohio-3190, 2003 WL 21404511, ¶ 17. A contract provision is ambiguous if it is susceptible of more than one reasonable interpretation. *Otto v. Country Mut. Ins. Co.*, 10th Dist. No. 07AP–227, 2008-Ohio-1514, 2008 WL 852613, ¶ 18.

{¶ 20} In our view, the language upon which the trial court relied is not ambiguous. Because the Civic was specifically listed on the policy declarations, it is "insured" under the liability coverage of the policy and thus is not "uninsured." This is consistent with the language of the UM/UIM statute, R.C. 3937.18, which refers to *vehicles* having (or not having) liability coverage. The statute also provides, "For purposes of underinsured motorist coverage, an 'underinsured motorist' does not include the owner or operator of a motor vehicle that has applicable liability coverage in the policy under which the underinsured motorist coverage is provided." This court rejected the same argument that appellant now advances in the case of *McDaniel v. Westfield Cos.,* 10th Dist. No. 03AP–441, 2003-Ohio-6662, 2003 WL 22927474, in which nearly identical policy language was involved. For all of the foregoing reasons, appellant's second assignment of error is overruled.

{¶ 21} In his third assignment of error, appellant argues that the UIM portion of John Jr.'s policy covers the damages to Ashley's estate and next of kin. The trial court rejected this argument based on the following language in John Jr.'s policy:

Allstate will not pay any damages an insured person * * * is legally entitled to recover because of bodily injury:

* * *

(2) while in * * * [a] motor vehicle owned by * * * you * * * which is not insured for this coverage.

(3) while in * * * a motor vehicle which you own which is insured for this coverage under another policy.

{¶ 22} It is undisputed that John Jr. owned the Civic, that the Civic is not listed on the declarations page of John Jr.'s policy in the section entitled "Vehicles Covered," and that the Civic is listed as one of the "Vehicles Covered" in another policy—appellant's. Based on these undisputed facts, the trial court determined that both exclusions to UIM coverage applied.

{¶ 23} On appeal, appellant argues that these two exclusions are ambiguous because the phrases "which is not insured for this coverage" and "which is insured for this coverage under another policy" are susceptible of different interpretations because throughout John Jr.'s policy the word "insured" often refers to persons, not vehicles. Appellee argues that as a matter of fundamental grammar, the word "which" refers to things and the words "who" and "whom" refer to people. Thus, appellee argues, the use of "which" in the exclusions makes it clear that the word "insured" refers to vehicles, not people.

{¶ 24} We have rejected appellant's argument in two previous cases involving virtually identical policy language. *Weinsziehr v. Allstate Ins. Co.,* 10th Dist. No.

03AP–96, 2003-Ohio-5450, 2003 WL 22332020 (language similar to exclusion (3)); *Gaines v. State Farm Mut. Auto. Ins. Co.* (Apr. 30, 2002), 10th Dist. No. 01AP–947, 2002 WL 755884 (language similar to exclusion (2)). We hold that John Jr.'s policy unambiguously excludes UIM coverage of damages for bodily injury to an insured while in a vehicle that John Jr. owned but that was not listed as covered under his policy, and while in a vehicle that John Jr. owned but that was listed as covered under the UM/UIM coverage in another policy. Because the undisputed facts establish that both exclusions apply, appellant's argument for coverage under the UM/UIM section of John Jr.'s policy is unavailing. Accordingly, appellant's third assignment of error is overruled.

{¶ 25} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and CONNOR, JJ., concur.